http://www.va.gov/vetapp16/Files6/1644957.txt

Citation Nr: 1644957 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 11-04 992 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado

THE ISSUE

Entitlement to an increased evaluation for left thumb, degenerative joint disease (DJD), status post laceration with residual paresthesias, currently rated as 10 percent disabling. 

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

K. Kardian, Associate Counsel 
INTRODUCTION

The Veteran served on active duty from March 1989 to March 2009.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah, which, in pertinent part, awarded service connection for left thumb arthritic changes, status post skin avulsion/laceration (noncompensable) from April 1, 2009. RO jurisdiction has been transferred to the RO in Denver, Colorado. By way of a June 2011 decision, the Veteran received a 10 percent increased rating for his left thumb disability (assigned under Diagnostic Code 5228-8615). 

When a Veteran files a claim for an increased rating, he is presumed to be seeking the maximum benefit under any applicable theory, including TDIU and special monthly compensation (SMC). See generally Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001); Rice, 22 Vet. App. 447 see also, Akles v. Derwinski, 1 Vet. App. 118 (1991).The Veteran has not alleged he is unemployed as a result of his service-connected disabilities. Therefore, the Board finds the issue of entitlement to TDIU has not been raised. 

Regarding SMC, the Veteran does not have a single disability rated at 100 percent with an additional disability rated at 60 percent or more, even when considering TDIU and temporary total ratings. 38 U.S.C.A. § 1114(s); Bradley v. Peake, 22 Vet. App. 280 (2008); Buie v. Shinseki, 24 Vet. App. 242 (2010); 38 C.F.R. §§ 3.350(i), 4.29, 4.30.There is no lay or medical evidence the Veteran is housebound in fact, requires aid and attendance, or that his disabilities result in loss of use of a limb, blindness or deafness. 38 U.S.C.A. §§ 1114(s), (l), (k); 38 C.F.R. § 3.350(a), (b), (i). As such, the Board will not infer the issue of entitlement to SMC.

The Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge (VLJ) in April 2015. A transcript of the hearing is associated with the claims files.

The Board has reviewed the electronic records maintained in Virtual VA and Veterans Benefits Management System (VBMS) to ensure consideration of the totality of the evidence.

The issue of entitlement to an increased rating for the Veteran's service-connection left thumb scar has been raised by the record in a February 2011 statement, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is again referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015). 

FINDING OF FACT

Left thumb, degenerative joint disease (DJD), status post laceration with residual paresthesias was manifested by daily pain, throbbing, and ongoing feelings of pins and needles, and most closely approximates mild paralysis of the non-dominant left thumb, with full range of motion. 

CONCLUSION OF LAW

The criteria for a rating in excess of 10 percent for left thumb, degenerative joint disease (DJD), status post laceration with residual paresthesias have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.14, 4.121a, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5228-8615 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claims. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).
Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the Veteran and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim, the evidence VA will obtain on the Veteran's behalf, and the evidence the Veteran is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). The notice must be provided to the Veteran prior to the initial adjudication of his claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In this case, the appeal arises from the Veteran's disagreement with the initial evaluation following the grant of service connection. Once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). No additional discussion of the duty to notify is therefore required.

During the hearing, the VLJ clarified the issue, and explained an increased rating claim. The Veteran demonstrated through his testimony that he had actual knowledge concerning what is required to substantiate his claims. The actions of the VLJ supplement VCAA and comply with 38 C.F.R. § 3.103.

The duty to assist includes assisting the claimant in the procurement of relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The RO associated the Veteran's service treatment records (STRs) with the claims file. In addition, the RO associated the Veteran's VA treatment records and Department of Defense (DoD) treatment records with the claims file. No other relevant records have been identified and are outstanding. As such, the Board finds VA has satisfied its duty to assist with the procurement of relevant records. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159(c)(4). In this case, the Veteran was provided with VA examinations relating to his left thumb in May 2011 and November 2015. The examinations were adequate because the examiners considered and addressed the Veteran's contentions, reviewed the claims file in conjunction with the examinations, and conducted thorough medical examinations of the Veteran. Based on the foregoing, the Board finds the examination reports and opinions to be thorough, complete, and sufficient bases upon which to reach a decision on the Veteran's increased rating claim. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-05 (2008); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Since VA has obtained all relevant identified records and provided adequate medical examinations, its duty to assist in this case is satisfied.

II. Compliance with Prior Remand

Previously, the case was before the Board in July 2015. The case was remanded to obtain additional treatment records and provide the Veteran with a VA examination to determine the current severity of his service-connected left thumb disability. Correspondence was sent to the Veteran in October 2015 requesting the Veteran identify and authorize for release any outstanding VA or private treatment records relating to his left thumb disability. See October 5, 2015 VA correspondence. Additional treatment records have not been identified or provided by the Veteran. The Veteran was provided with an orthopedic and neurological examination addressing the current severity of his service-connected left thumb. The Board finds there has been substantial compliance with the prior remand. 

III. Schedular Rating

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1 (2013); Peyton v. Derwinski, 1 Vet. App. 282 (1991). 

Separate evaluations may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be staged. Staged ratings are appropriate for any rating claim when the factual findings show distinct time periods during the appeal period where the service-connected disability exhibits symptoms that would warrant different ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Here, there is no indication the Veteran's left thumb disability has materially changed and as a result staged ratings are not warranted. 

If the evidence for and against a claim is in equipoise, the claim will be granted. 38 C.F.R. § 4.3 (2015). A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

When evaluating disabilities of the musculoskeletal system, functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements must be considered. See 38 C.F.R. § 4.40; DeLuca v. Brown, 8 Vet. App. 202 (1995). Consideration must also be given to weakened movement, excess fatigability and incoordination. 38 C.F.R. § 4.45.

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

IV. Analysis

The Veteran contends he is entitled to an increased rating for his service-connected left thumb, degenerative joint disease (DJD), status post laceration with residual paresthesias, currently rated as 10 percent disabling. The Veteran's left thumb DJD status post laceration with residual paresthesias is rated at 10 percent under 38 C.F.R. § 4.71a, Diagnostic Code 5228-8615, covering thumb limitation of motion and neuritis, mild. The Board will address the 10 percent rating for the period on appeal applying all pertinent Diagnostic Codes. 

Under the General Rating Formula, in rating peripheral nerve injuries and their residuals, attention should be given to the site and character of the injury, the relative impairment and motor function, trophic changes, or sensory disturbances. 38 C.F.R. § 4.120. Under 38 C.F.R. § 4.124a, disability from neurological disorders is rated from 10 to 100 percent in proportion to the impairment of motor, sensory, or mental function. With partial loss of use of one or more extremities from neurological lesions, rating is to be by comparison with mild, moderate, severe, or complete paralysis of the peripheral nerves. The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type of picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a.

When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. Id. In rating peripheral nerve disability, neuritis, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete paralysis. 38 C.F.R. § 4.123. 

Neuralgia, cranial or peripheral, characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scale, with a maximum equal to moderate, incomplete paralysis. 38 C.F.R. § 4.124.

As discussed below, Diagnostic Code 5228, thumb limitation of motion is also for consideration. Under Diagnostic Code 5228, a noncompensable disability evaluation is assigned for limitation of motion of the thumb with a gap of less than one inch (2.5 cm) between the thumb pad and the fingers, with the thumb attempting to oppose the fingers. A 10 percent disability evaluation is assigned for a gap of one to two inches (2.5 to 5.1 centimeters) between the thumb pad and the fingers, with the thumb attempting to oppose the fingers. A 20 percent disability evaluation is assigned for a gap of more than two inches (5.1 cm) between the thumb and fingers, with the thumb attempting to oppose the fingers. 38 C.F.R. § 4.71a.

Various nerve groups have different rating criteria. In this case, the RO rated the Veteran's left thumb disability, with degenerative joint disease (DJD), status post laceration with residual paresthesias, under Diagnostic Code 8615, which provides the rating criteria for neuritis of the median nerve. Paralysis and incomplete paralysis of the median nerve are rated under DC 8515. Neuralgia of the median nerve is rated under DC 8715.

Under these diagnostic codes, mild neuritis, neuralgia or incomplete paralysis of the median nerve is rated 10 percent disabling; moderate impairment is rated 20 percent disabling for a minor extremity (minor) or 30 percent disabling for a major extremity (major); and severe impairment of the median nerve is 40 percent (minor) or 50 percent (major) disabling. Complete paralysis of the median nerve warrants a 60 percent (minor) or 70 percent (major) evaluation with the hand inclined to the ulnar side with the index and middle fingers more extended than normally, considerable atrophy of the muscles of the thenar eminence, and the thumb in the plane of the hand (ape hand); incomplete and defective pronation of the hand with the absence of flexion of the index finger, feeble flexion of the middle finger, inability to make a fist, and index and middle fingers that remain extended; inability to flex the distal phalanx of the thumb with defective opposition and abduction of the thumb at right angles to the palm; weakened flexion of the wrist; and pain with trophic disturbances. 38 C.F.R. § 4.124a, DCs 8615, 8615, 8715. At VA examinations in connection with this claim on appeal, the Veteran reported he is right -hand dominant, hence the left hand represents a minor extremity.

Based on the evidence of record the Board finds that the preponderance of the evidence is against a finding that an increased rating in excess of 10 percent for the Veteran's left thumb disability is warranted. At different times during the period on appeal, the Veteran has stated his thumb has been manifested by pain, throbbing and feelings of pins and needles. Further, the Veteran has reported difficulty with everyday tasks including grabbing objects and the use of fine motor skills. The Veteran is competent to testify to such lay observable symptomatology, and there is no evidence that these statements are not credible. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). As such, these statements are entitled to probative value as to the severity of his left thumb disability during this period on appeal.

During this period the Veteran was provided with VA examinations in May 2011 and in November 2015. At the May 2011 VA examination the Veteran reported experiencing ongoing pain, throbbing, and pins and needles on the tip of his thumb, which increased with use. The examination revealed no locking, stiffness, swelling, or instability. The Veteran had no gap with opposition of his thumb to his fingers. Decreased left thumb motor strength with active range of motion at the thumb MCP joint and IP joint due to paresthesias was noted. Strength was normal. The Veteran had normal range of motion of his hand and fingers. On repetitive testing there was no significant change in active range of motion, and no additional loss of range of motion or functional impact. The impression was left thumb degenerative joint disease at the first MCP joint status post laceration with residuals of paresthesias limiting strength of left MCP and IP joints. Id. 

The Veteran was afforded another VA examination in November 2015. The Veteran reported persistent pain in his left thumb, which increases when gripping an object, decreased strength, constant pins and needles, throbbing, and difficulty completing activities of daily living. See November 2015 VA examination. Range of motion testing reported no gap between the pad of the thumb and fingers, and no gap between the finger and proximal transverse crease of the hand on maximal finger flexion. On repetitive use the Veteran did not have additional functional loss or range of motion, and flare-ups were noted. The examiner noted that pain, weakness, fatigability or incoordination did not significantly limit functional ability with repeated use over time. Muscle strength testing was normal, no muscle atrophy or ankylosis was noted. The examiner noted the Veteran reported additional occupational limitations as the Veteran has had to alter his body mechanics because he cannot use his left thumb in many tasks working as a mechanic. A peripheral nerve examination found that the Veteran did not have a peripheral nerve condition or peripheral neuropathy. 

There is no evidence that the VA examiners were not competent or credible, and as the examination reports were based on accurate facts and an objective examination of the Veteran, they are entitled to significant probative weight in determining the severity of the Veteran's left thumb disability during the course of the appeal. Nieves-Rodriguez, 22 Vet. App. 295.

VA and DoD treatment records have been associated with the claims file. Treatment records in March 2010, noted ongoing pain and sensitivity in the tip of the Veteran's left thumb impacting his grip. See DoD March 30, 2010 treatment record. Examination noted the thumb was tender to touch; the Veteran had full range of motion of the interphalangeal joint and metacarpophalangeal joints, and full strength. Id. 

Based on the lay and medical evidence of record, the Board finds that the Veteran's left thumb disability does not more nearly approximate the level of severity contemplated by a 20 percent rating, as at no point during the period on appeal has the evidence shown a 20 percent rating is warranted. The Board notes the Veteran's contentions regarding his increased pain, ongoing throbbing and experiencing pins and needles in his thumb, and difficulty completing fine motor tasks of everyday living. The Veteran is competent to testify to such lay observable symptomatology. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). However, such lay evidence, even when accepted as accurate, does not establish a level of disability contemplated by a higher evaluation. DoD treatment records noted complaints of pain, with normal range of motion and full strength of the thumb. The May 2011 VA examination noted normal range of motion and residuals of paresthesias limiting strength of the left MCP and IP joints. The November 2015 VA examination noted normal range of motion and found on peripheral nerve examination found that the Veteran did not have a peripheral nerve condition or peripheral neuropathy. There was no indication of loss of reflexes, muscle atrophy or sensory disturbances, warranting a higher evaluation, for moderate incomplete paralysis. Further, the evidence of record does not support a compensable evaluation under Diagnostic Code 5228, limitation of motion of thumb. In order to warrant a 10 percent disability evaluation there must be evidence of limitation of motion of the thumb with a gap of one to two inches (2.5 to 5.1 centimeters) between the thumb pad and the fingers, with the thumb attempting to oppose the fingers (DC 5228). Here, there is no limitation of motion, and there is no functional loss, no evidence of incoordination, atrophy or ankylosis. See 38 C.F.R. § 4.71a. In considering which disability evaluation shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Based on the evidence of record a 10 percent rating is warranted.

In order to warrant a higher 20 percent rating, there must be moderate incomplete paralysis and impairment of a minor median nerve. In this case, however, at no point has moderate impairment of the median nerve been shown. 38 C.F.R. § 4.124a. The Veteran's symptoms including throbbing, pins, needles and pain are sensory and a neurologic examination was negative for peripheral neuropathy, with minimal functional loss, thus most closely approximating mild incomplete paralysis. Further, additional separate ratings for associated objective neurologic abnormalities or chronic neurologic manifestations are not warranted because neurologic findings and symptoms warranting separate ratings have not been demonstrated.

In addition, as noted above, when assessing the severity of a musculoskeletal disability that is at least partly rated on the basis of limitation of motion, VA is generally required to consider the extent that the Veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent ("flare-ups") due to the extent of his pain, weakness, premature or excess fatigability, and incoordination. See DeLuca, 8 Vet. App. at 202; see also 38 C.F.R. §§ 4.40, 4.45, 4.59. Here, the examiner specifically found that repetition on the range of motion three times did not cause any additional limitation in degrees. Consequently, a higher rating is not warranted and no other diagnostic codes are applicable. 

The Board notes that the Veteran is currently separately rated under Diagnostic Code 5228-7804 for a left thumb scar, status post skin avulsion rated at 10 percent. As discussed above, the Veteran has in a February 2011 statement raised entitlement to an increased rating for his service-connected left thumb scar, and such has not be adjudicated by the AOJ. As a result, the issue of an increased rating for a left thumb scar is not before the Board, and is again referred to the AOJ. 

In conclusion, all potentially applicable Diagnostic Codes have been considered. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). The preponderance of the evidence is against increased ratings in excess of 10 percent for the Veteran's service-connected left thumb disability. As such, the benefit-of-the-doubt doctrine is inapplicable. 38 C.F.R. § 4.3. For these reasons, the claim is denied.

V. Extraschedular Consideration

Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, 572 F.3d 1366 (Fed. Cir. 2009). The first element requires a finding that the evidence "presents such an exceptional or unusual disability picture that the available schedular evaluations for that service-connected disability are inadequate." See id. at 115. In order to determine whether a disability is "exceptional or unusual," there "must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." Id. "[I]f the [rating] criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, [and] the assigned schedular evaluation is, therefore adequate, and no referral is required." Id. 

The first Thun element is not satisfied here. The Veteran's left thumb, DJD, status post laceration with residual paresthesias is manifested by pain, throbbing, pins and needles. These signs and symptoms, and their resulting impairment, are specifically contemplated by the rating schedule as part of the rating schedule for musculoskeletal disabilities. See 38 C.F.R. § 4.71a, Diagnostic Code 5228-8615. For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased, or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell, 25 Vet. App. at 37. 

For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement, excess fatigability, pain on movement, disturbance of locomotion, and interference with sitting, standing and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. In summary, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss.

Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. While some of the Veteran's symptoms are not directly contemplated by the rating criteria, such as pain, trouble with grip and functional limitations, which are largely attributed to his left thumb pain, the effect of which is directly taken into account in assigning the Veteran's disability ratings based on neuritis of the median nerve. 38 C.F.R. §§ 4.124a, Diagnostic Code 5228-8615. In short, there is nothing exceptional or unusual about the Veteran's left thumb disability because the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115. Therefore, referral for extraschedular consideration is not warranted.

Finally, a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (2014). In this case, the Veteran is service-connected for a left thumb DJD, status post laceration with residual paresthesias rated at 10 percent; right shoulder DJD, with enchondroma of right humerus, rated at 10 percent; right elbow olecranon bursa post traumatic scarring rated at 10 percent; left knee patellofemoral pain syndrome, rated at 10 percent; right knee patellofemoral pain syndrome, rated at 10 percent; lumbosacral spine compression fracture L1 vertebra, rated at 10 percent; tinnitus, rated at 10 percent; left thumb scar, status post skin avulsion/laceration, rated at 10 percent; left elbow DJD, rated noncompensable; left ear hearing loss, rated noncompensable, internal hemorrhoids, rated noncompensable . The Veteran has not alleged that his currently service-connected disabilities combine to result in additional disability or symptomatology that is not already contemplated by the rating criteria for each individual disability.

ORDER

Entitlement to an increased initial rating in excess of 10 percent for left thumb degenerative joint disease, status post laceration with paresthesias, is denied. 

____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs